FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8:34

STATE OF WASHINGTON

BY _____
                DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NORTHSHORE INVESTORS,, LLC, a Washington limited liability company; and NORTH SHORE GOLF ASSOCIATES, INC., a Washington corporation; and SAVE NE TACOMA, a Washington non-profit corporation, et al., | No. 42490-8-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| CITY OF TACOMA, a Washington municipal corporation, | |
| Respondent. | |

PENOYAR, J. — The parties and amici ask us to address important legal issues related to the city of Tacoma's (City) denial of a significant rezone request. But because this lawsuit was not served on the necessary parties within the strict statutory time period, we reverse and remand for dismissal.

Northshore Investors (Northshore) submitted an application to the City for permits to redevelop North Shore Golf Associates' (the Owners) golf course. In the application, Northshore requested approval of the development's preliminary plat, approval of a rezone modification, site plan approval, multiple variances and reductions to development standards, and wetland/stream approvals or exemptions. Save NE Tacoma (SNET) opposed the application. A Tacoma Hearing Examiner (Examiner) recommended that the Tacoma City Council (Council) deny the rezone modification request. Consequently, the Examiner denied Northshore's other requests. Northshore filed a Land Use Petition Act (LUPA)[1] petition and

---

[1] Ch. 36.70C RCW.

appealed the Examiner's recommendation on the rezone modification application to the Council. The parties agreed that Northshore could file and serve an amended LUPA petition within 21 days of the Council's decision in order to address that decision. The Council denied Northshore's rezone modification request at a hearing. Northshore then filed an amended LUPA petition and, 23 days after the Council's hearing, served the City and SNET with that petition. The City and SNET filed motions to dismiss the amended LUPA petition for untimely service, but the superior court denied the motions.

The City and SNET now appeal the superior court's denial of their motions to dismiss. The City and SNET argue that Northshore failed to meet the statutory requirement to serve them within 21 days of the date the Council issued its final land use decision, thus depriving the superior court of jurisdiction to hear the petition. We hold that the 21-day period began to run on the date of the Council's oral vote because this vote, not the subsequent notice of appeal results the City Clerk (Clerk) mailed, was the final decision and was entered into the public record in several formats. Accordingly, we reverse the superior court's denial of the motions and remand for dismissal of the amended and original LUPA petitions.

FACTS

I.    BACKGROUND

Northshore Country Club Estates (Estates), located in northeast Tacoma, is a planned residential district (PRD) consisting of residential areas and an 18-hole golf course. It is located within an "R-2 PRD" one-family-dwelling and PRD district. Clerk's Papers (CP) at 25.

The golf course is privately owned and occupies approximately 116 acres of the 338-acre PRD. The golf course's ownership is separate from ownership of the surrounding residential areas.

2

In 1981, the R-2 PRD rezoning for the area was approved, along with general approval of divisions 2, 3, and 4 of Estates, with specific preliminary plat approval of division 2A. Since then, divisions 2, 3, and 4 have been finally platted and developed around and within the golf course.

At the time of the 1981 rezone, the Owners and the developer of Estates had an "Agreement Concerning North Shore Golf Course." CP at 27. The agreement allowed the developer to include the golf course as open space, which was necessary to obtain the R-2 PRD zoning for residential development of Estates.

The 1981 Examiner recommendations, adopted by the Council, called for approval of the rezone and of the preliminary plat of division 2A subject to conditions, including the following:

> The applicant shall submit a legal agreement, which is binding upon all parties and which may be enforced by the City of Tacoma. It should provide that the *property in question will maintain and always have the use of the adjacent golf course for its open space and density requirement which has been relied upon by the applicant in securing approval of this request.* . . . However, the Examiner believes that there must be more certainty provided to insure the golf course use, which was relied upon to gain the density for this request, is clearly tied to the applicant's proposed use in perpetuity.

Administrative Record (AR) at 47 (emphasis added). The restriction of the open space use was implemented by an "Open Space Taxation Agreement" and a "Concomitant Zoning Agreement." AR at 49, 57. The Open Space Taxation Agreement provides, "The use of such land shall be restricted solely to golf course and open space use. No use of such land other than as specifically provided hereunder shall be authorized or allowed without the express consent of the City of Tacoma." AR at 49. The agreement runs with the land and is binding on the heirs, successors, and assigns of the parties. The Concomitant Zoning Agreement requires adhering to the approved site plan that includes the golf course.

On January 29, 2007, Northshore[2] submitted an application for permits to redevelop the golf course. The development, named "The Point at Northshore," would comprise 860 residential units and multiple tracts containing open space, slopes, private access roads, utilities, and recreation areas. CP at 25. Northshore sought preliminary plat approval of The Point at Northshore, rezone modification approval, site plan approval, multiple variances and reductions to development standards, and wetland/stream exemptions or approvals.

The application proposed to use the golf course grounds for housing. The preliminary plat request was "a request to subdivide the Northshore Golf Course site into 860 lots." CP at 23. The site plan approval request was "a request for site plan approval for development of the golf course, accompanying the rezone request." CP at 23. The rezone modification request asked "to modify an existing condition of approval placed on the golf course site in connection with Northshore Country Club Estates PRD in a previous rezone which occurred in 1981 and established the PRD designation for the site." CP at 23.

II.    PROCEDURAL BACKGROUND

In October 2009, the Examiner conducted a hearing on Northshore's application. On January 7, 2010, the Examiner recommended that the Council deny the rezone modification. The Examiner concluded:

> The inability to approve the Rezone Modification . . . makes approval of the Site Plan impossible. Because the rezone is inconsistent with the district establishment statement, it is inconsistent with the intent of the PRD district. *TMC* [Tacoma Municipal Code] 13.06.140(B)(2). Similarly the failure to demonstrate sufficient changes in condition removes any basis for modifying or

---

[2] It is unclear whether the application was submitted by only Northshore or by both Northshore and the Owners. Although the Examiner's decision designates Northshore as the applicant, a declaratory judgment from 2009 refers to applications submitted by the Owners and Northshore to redevelop the golf course.

removing the [Concomitant Zoning Agreement] condition requiring adherence to the original Site Plan. See *TMC* 13.140(B)(3)(d).

CP at 43. Consequently, the Examiner also denied Northshore's application for preliminary plat and site plan approval. Based on the denial of the application for preliminary plat and site plan approval, the Examiner declined to consider Northshore's application for variances/reductions, wetland/stream assessments, and wetland/stream exemptions.

Northshore and the Owners appealed the Examiner's recommendation to the Council on January 21, 2010. The Clerk mailed a document dated January 22 and titled "Notice of Filing of an Appeal" to all parties. CP at 549. A copy of chapter 1.70 TMC, "Appeals to the City Council," was attached to the notice. CP at 553.

On January 28, Northshore and the Owners timely filed and served a LUPA petition challenging the Examiner's decisions to deny the applications for preliminary plat and site plan approval and to decline to address their related applications for variances/reductions, wetland/stream assessments, and wetland/stream exemptions. SNET also filed a LUPA petition challenging various aspects of the Examiner's decision. The parties stipulated to consolidation of the LUPA appeals and agreed to stay the proceedings until the Council issued its final decision on the rezone modification appeal.

Northshore and the Owners were required to appeal the Examiner's recommendation on the application for a rezone modification to the Council before seeking judicial review. Accordingly, the parties stipulated that they could file amended LUPA petitions consistent with RCW 36.70C.040 and .070 to address the Council's decision on the rezone modification appeal within 21 days of the Council issuing its final decision. In so stipulating, the parties noted that

"[i]f the City Council issue[d] a decision on April 13, 2010, the related appeal deadline would be on or about May 4, 2010." CP at 45.

On April 13, the Council heard the appeal. Northshore's attorney was present at the hearing and argued on behalf of Northshore and the Owners. The Owners' realtor, who also served as its representative, attended the meeting as well. The hearing was broadcast live on television and streamed live on the City's official website. At the hearing, a motion was made and seconded to concur in the Examiner's findings, conclusions, and recommendation to deny the appeal. The Council adopted the motion by a roll call vote of 8 ayes, 0 nays, and 1 recused. Both Northshore's attorney and the Owners' realtor were present when the Council voted to reject the rezone modification application. Directly after the meeting, a video recording of the hearing was posted on the City's website. The following day, a DVD copy of the video was delivered to the Tacoma Public Library, and the voting record and a closed-caption transcript of the hearing were made available on the City's website.

The Clerk then mailed a "Notice of Appeal Results" dated April 15 to the parties. CP at 82. The notice reads:

> Please be advised that on Tuesday, April 13, 2010, the Tacoma City Council heard the appeal of Schwabe, Williamson & Wyatt, P.C. representing the Appellants Northshore Investors, LLC and North Shore Golf Associates, Inc. on the recommendation of the Hearing Examiner regarding the request to modify an existing condition of approval placed on the golf course site in connection with Northshore Country Club Estates Planned Residential Development District in a previous rezone which occurred in 1981 and established the PRD designation for the site. . . .
>
> At that time the City Council moved to concur with the Findings, Conclusions and Recommendation of the Hearing Examiner and denied the appeal.

CP at 82. The Clerk signed the document.

6

On May 3, 20 days after the Council heard the appeal, Northshore and the Owners filed an amended LUPA petition in the Pierce County Superior Court, incorporating their appeal of the Council's decision. Northshore served the City and SNET on May 6, 23 days after the Council heard the appeal.

On May 14, the City moved to dismiss the amended LUPA petition for lack of jurisdiction based on late service. Specifically, the City asserted that Northshore and the Owners had failed to serve the amended LUPA petition on the City within 21 days of the issuance of the land use decision. The City further asserted that "because dismissal of the Amended Petition will render it impossible for this Court to provide Petitioners the relief they seek in their original LUPA Petition, Tacoma requests that the original LUPA Petition also be dismissed." CP at 104-05. SNET also moved to dismiss the amended and original LUPA petitions on this basis and joined the City's motion to dismiss. The superior court denied the motions to dismiss, concluding:

> [T]he written decision is a written codification [of an] oral decision. Given how frequently the City and County Council backtrack on some of their oral decisions, obviously, sending—reducing it to writing and sending it out, particularly when the Clerk, the City Clerk, is charged with doing that, indicates that the final decision is the written one. Once it's mailed out, there's three days' time for mailing; and then you have 21 days to file a LUPA after that. It was timely filed.

Report of Proceeding (RP) (June 18, 2010) at 20.

The superior court later denied the LUPA petitions, concluding that none of the petitioning parties had met its burden under LUPA standards. Northshore, the City, and SNET appeal.

7

ANALYSIS

I.    AMENDED LUPA PETITION

In their cross appeals, the City and SNET contend that the superior court erred by denying their motions to dismiss the amended LUPA petition for Northshore's failure to timely serve them within 21 days of the Council's issuance of its land use decision. Specifically, the City and SNET contend that the Council made its land use decision when it adopted by voice vote the motion to concur in the Examiner's findings, conclusions, and recommendation. The City and SNET contend that the oral decision was issued when it was entered into the public record on April 13 or, at the latest, when it was entered into the public record again on April 14. In response, Northshore contends that the Council issued its decision three days after the Clerk mailed the notice of appeal results. Northshore contends that case law, the TMC, and LUPA support its contention that the notice of appeal results was a written decision.

We hold that the TMC does not require the Council to issue written decisions; that the very language of the notice of appeal results shows that it is not a "written decision"; and that, under RCW 36.70C.040(4)(c), the Council issued its decision on April 13. Because Northshore did not serve the City and SNET within 21 days of the Council's issuance of its land use decision, the superior court erred by denying the City's and SNET's motions to dismiss.

A.    Standard of Review

"When conducting judicial review under LUPA, we sit in the same position as the superior court and give no deference to its findings." *Vogel v. City of Richland*, 161 Wn. App. 770, 777, 255 P.3d 805 (2011) (citing *Griffin v. Thurston County Bd. of Health*, 165 Wn.2d 50, 54–55, 196 P.3d 141 (2008)). Whether a LUPA petition is timely turns on a construction of

8

when a land use decision is issued under the meaning of LUPA and statutory construction is a question of law we review de novo. *Vogel*, 161 Wn. App at 777.

B.      Service

"LUPA's stated purpose is 'timely judicial review.'" *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 406, 120 P.3d 56 (2005) (quoting RCW 36.70C.010). Under LUPA, "[a] land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court *and* timely served . . . ." RCW 36.70C.040(2) (emphasis added).

A LUPA petition is timely if it is filed and served within 21 days of the issuance of the land use decision. RCW 36.70C.040(3). A land use decision issues on one of three dates:

> (a) Three days after a written decision is mailed by the local jurisdiction or, if not mailed, the date on which the local jurisdiction provides notice that a written decision is publicly available;
> (b) If the land use decision is made by ordinance or resolution by a legislative body sitting in a quasi-judicial capacity, the date the body passes the ordinance or resolution; or
> (c) If neither (a) nor (b) of this subsection applies, the date the decision is entered into the public record.

RCW 36.70C.040(4)(a)-(c).

The trial court had no authority to hear this case if service was untimely. LUPA's filing and service requirements are jurisdictional. *See* RCW 36.70C.040(2); *Lakeside Indus. v. Thurston County*, 119 Wn. App. 886, 900, 83 P.3d 433 (2004). Thus, a land use decision becomes unreviewable if not appealed to the superior court within LUPA's specified timeline. *Habitat Watch*, 155 Wn.2d at 407.

Because LUPA contains explicit directives for filing and service, the doctrine of substantial compliance does not apply to RCW 36.70C.040. *Overhulse Neighborhood Ass'n v. Thurston County.*, 94 Wn. App. 593, 599, 972 P.2d 470 (1999). Our Supreme Court has noted

that "[r]equiring strict compliance with the statutory bar against untimely petitions promotes the finality of local land use decisions." *Knight v. City of Yelm*, 173 Wn.2d 325, 338, 267 P.3d 973 (2011).

### 1. The Council Issued an Oral Decision

The parties here do not contest the applicable LUPA filing and service requirements. Rather, the parties diverge on when the land use decision Northshore challenges was "issued" under RCW 36.70C.040(4); the applicable subsection of this statute determines the deadline Northshore had for serving the City and SNET. Northshore contends that subsection (a) applies to this case because the notice of appeal results constituted a written decision. Thus, service was timely because the land use decision did not issue until three days after the notice was mailed. The City and SNET contend that subsection (c) applies because the Council made only an oral decision. Thus, service was untimely because the land use decision issued when the oral decision was entered into the public record, at the latest, one day after the Council made the decision.

The Clerk mailed a notice of appeal results dated April 15 to the parties. Northshore contends that this notice—and not the Council's oral vote—was the final land use decision because the TMC requires a written decision. This assertion ignores the plain language of the notice itself, which states, "Please be advised that on Tuesday, April 13, 2010, the Tacoma City Council *heard* the appeal of [Northshore] on the recommendation of the Hearing Examiner . . . . At that time, the City Council *moved* to concur with the Findings, Conclusions and Recommendation of the Hearing Examiner and *denied* the appeal." CP at 82 (emphasis added). And, the mailed document was labeled as a "Notice of Appeal Results," indicating that the document was a notice, not a decision. CP at 82.

10

Further, the notice of appeal results refers to the Council's decision in the past tense, and the notice was written after the Council had made its decision, supporting the City's claim that the Council issued the land use decision on April 13, 2010. We recognize, however, the contrast presented by *Hale v. Island County*, 88 Wn. App. 764, 946 P.2d 1192 (1997). In *Hale*, the Board of Island County Commissioners (BICC) voted at a February 5, 1996, public hearing to adopt the Planning Commission's recommendation. 88 Wn. App. at 767. On February 20, the county mailed a copy of the written decision to all parties of record. *Hale*, 88 Wn. App. at 767. The *Hale* court held that subsection (a) of RCW 36.70C.040(4) applied and that the decision did not issue until three days after the mailing of the written decision. 88 Wn. App. at 768. Responding to the argument that the mailed decision was merely a document memorializing the BICC's earlier vote at the public hearing, the court held that

> the writing is the decision itself. Nothing in the [county code] mandates that the decision be made in writing. But here a proposed written decision was prepared in advance and presented to the BICC for approval. When the BICC voted to approve, it signed the document and had it attested. It states in the present tense that the "use described in this permit shall be undertaken[.]" The document was not written after the decision had been made. When Island County mailed a copy, its cover letter referred to it as a "decision document" and we agree with that characterization.

*Hale*, 88 Wn. App. at 769 (alteration in original).[3]

Northshore argues that *Hale* supports its argument that the notice of appeal results was a written decision, but Northshore fails to address the plain distinctions between *Hale* and the case at hand. Here, the notice was written after the decision was made. Most importantly, the notice underscores that the City Council had already made its decision: "Please be advised that on

---

[3] The *Hale* court noted that "without a local or statutory requirement that a written decision be mailed within a specific time, the Land Use Petition Act lends itself to some uncertainty. But any change to the statute's plain language must come from the Legislature." 88 Wn. App. at 769.

11

Tuesday, April 13, 2010, the Tacoma City Council *heard* [Northshore's] appeal . . . . At that time the City Council *moved* to concur with the Findings, Conclusions and Recommendation of the Hearing Examiner and *denied* the appeal." CP at 82 (emphasis added).

Here, the facts parallel those our Supreme Court clearly contemplated in *Habitat Watch*. There, the court elaborated on the likely meaning of subsection (c) of RCW 36.70C.040(4), noting that it may apply when a decision is neither written nor made by ordinance or resolution; in such a case, the decision issues on the date it is entered into the public record. *Habitat Watch*, 155 Wn.2d at 408 n.5. The court noted that subsection (c) would include decisions made orally at city council meetings and that a decision in such a case would issue "when the minutes from the meeting are made open to the public or the decision is otherwise memorialized such that it is publicly accessible." *Habitat Watch*, 155 Wn.2d at 409 n.5. This reading mirrors the plain language of LUPA, which provides that a land use decision is "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals." RCW 36.70C.020(2).

Northshore contends that the *Habitat Watch* court "passed on the opportunity to apply the 21-day time bar from the date the decision was 'entered into the public record,'" choosing instead to analyze issuance from when the local jurisdiction provided a written decision. Response Br. of Appellant (Northshore) at 17 (citing *Habitat Watch*, 155 Wn.2d at 409). Northshore argues that this approach disfavors applying subsection (c) when there is "communication of a writing." Response Br. of Appellant (Northshore) at 18. But the *Habitat Watch* Court expressly noted that it was unclear from the record and briefing when the challenged decisions—two permit extensions—were issued within the meaning of RCW 36.70C.040(4): nothing in the record showed that these decisions were mailed to the parties,

were otherwise made public or were passed by ordinance or resolution; and it was also "unclear if and when the decisions were 'entered' into the public record." 155 Wn.2d at 408. But the court did "not determine when the decisions were issued because even under the last possible date, Habitat Watch failed to file a LUPA petition within 21 days." *Habitat Watch*, 155 Wn.2d at 409 n.6.

Northshore relies on several distinguishable cases to support its contention that the notice the Clerk sent here constituted a written decision. Northshore cites *King's Way Foursquare Church v. Clallam County* for the proposition that the date of a decision is generally the date on which the decision is reduced to writing. 128 Wn. App. 687, 691-95, 116 P.3d 1060 (2005). But *King's Way* dealt with subsection (b) of RCW 36.70C.040(4), which pertains to ordinances and resolutions. In *King's Way*, the Clallam County Board of Commissioners "orally indicated that it would affirm the hearing examiner" and, then, two weeks later, adopted and signed a resolution in which it affirmed the hearing examiner. 128 Wn. App at 689. In reaching the conclusion that the county board issued its decision when it entered the written resolution and not when it orally indicated its intent to affirm, the court in *King's Way* Court noted that "[i]n judicial proceedings, the date of a decision is generally the date on which the decision is reduced to writing, as opposed to an earlier date on which it may be orally announced. In quasi-judicial proceedings such as these, the rule is the same." 128 Wn. App. at 691-92 (footnotes omitted). Quoting *Kilpatrick v. City of Anacortes*, 84 Wn. App. 327, 331, 927 P.2d 1145 (1996), the court noted:"[I]n [a] quasi-judicial proceeding, '[an] oral vote will not be final if further action is necessary to complete it—for example, when a vote to approve a variance is followed by a written order setting forth detailed conditions.'" *King's Way*, 128 Wn. App. at 692 n.6. Here, on the other hand, Northshore does not contend that further action was necessary to complete the

13

City Council's oral vote; rather, Northshore asserts that because the Council mailed "'a written decision' to the parties the day after the hearing," subsection (a) applies. Response Br. of Appellant (Northshore) at 11.

Northshore also unpersuasively argues that denial of the motions to dismiss is consistent with our decision in *Overhulse*. In *Overhulse*, we affirmed the superior court's dismissal of a LUPA petition for lack of jurisdiction because of improper service. 94 Wn. App at 596, 599. Northshore is correct that in *Overhulse* we noted that the challenged decision issued on January 10, three days after the Board of Commissioners mailed its decision on January 7, having affirmed the hearing examiner's decision on January 5. 94 Wn. App at 596, 596 n.1. It was undisputed in *Overhulse* that a written decision had been issued; thus, we did not analyze whether subsection (a) or subsection (c) of RCW 36.70C.040(4) applied. *Overhulse* is thus inapposite.

Finally, Northshore cites *Vogel* for support  There, the court noted that "until [an oral land use decision's] scope and terms have been memorialized in some tangible, accessible way, even the most diligent citizen cannot know whether the decision is objectionable or, if it is, whether there is a viable basis for a challenge." *Vogel*, 161 Wn. App. at 780. But the *Vogel* court was responding to the argument that city staff's memoranda to city council members alerting them of a decision to move forward with authorization of a development permit constituted a final land use decision that triggered LUPA's statute of limitations. 161 Wn. App. at 775, 779–80. The *Vogel* court framed the issue in that case as "whether a land use decision made on the basis of an oral request, to which there is an oral response, is 'issued' under the LUPA as soon as there is some reference to it in a public meeting or public record." 161 Wn. App. at 774. The court held that "issuance" under LUPA "require[s] more than a mere reference;

14

there must be a memorialization sufficient to identify the scope and terms of the decision." 161 Wn. App. at 774.

The *Vogel* court determined that "there is literally nothing in our record that purports to tell us exactly what the city staff authorized [the developer] to do." 161 Wn. App. at 780. Noting that the memoranda from the staff only discussed the proposal in non-final terms, the court found that the memoranda did not constitute a final land use decision under LUPA; the memoranda did not "purport to memorialize the terms of the decision, even summarily." *Vogel*, 161 Wn. App. at 779. Here, there was not merely a reference to a decision being made about a permit with an undefined scope. Instead, at the April 13 hearing, the Council voted to deny Northshore's appeal. There was no ambiguity about the Council's decision.

Northshore's claim that the Council issued a written decision fails. The notice of appeal results was not a written decision. It is labeled as a notice, was prepared after the hearing, and speaks of the Council's decision in the past tense. Further, no members of the Council signed the document. The notice was signed by the Clerk with no indication that it was written and sent at the request of or under the authority of the Council. Because the Council did not issue a written decision, RCW 36.70C.040(4)(a) does not apply.

In sum, RCW 36.70C.040(4)(c) applies; the land use decision was issued on the date it was entered into the public record. On April 13, the Council met and unanimously voted to deny Northshore's appeal. The Council hearing was broadcast and streamed live, and a video recording was made available on the City's website less than two hours after the meeting adjourned. The voting record and a closed-caption transcript of the hearing were made available on the City's website the next day. No further action was required to make the oral vote a final

15

decision, and the Council's vote properly identified the scope and terms of its decision. The Council entered its final decision on April 13.

2.    The Council Was Not Required to Issue a Written Decision

Next, Northshore contends that TMC 1.70.030 requires a written decision. Northshore also contends that the structure of RCW 36.70C.040(4) supports the conclusion that the Clerk's notice of appeal results constituted a written decision. Northshore's arguments fail because (1) chapter 1.70 TMC, when read as a whole, contemplates the Council issuing an oral, final land use decision following a Council hearing; and (2) the notice of appeal results was a notice, not a decision.

In reviewing municipal ordinances, we apply the same rules of statutory construction applied to state statutes. *City of Gig Harbor v. N. Pac. Design, Inc.*, 149 Wn. App. 159, 167, 201 P.3d 1096 (2009). "To the extent possible, all provisions should be harmonized so that no words or phrases are rendered superfluous or meaningless." *City of Puyallup v. Pac. Nw. Bell Tel. Co.*, 98 Wn.2d 443, 448, 656 P.2d 1035 (1982). Furthermore, "considerable judicial deference should be given to the construction of an ordinance by those officials charged with its enforcement." *Citizens for a Safe Neighborhood v. City of Seattle*, 67 Wn. App. 436, 440, 836 P.2d 235 (1992).

The TMC provides, in part, that "[t]he Council's decision shall be in writing and shall specify findings and conclusions whenever such findings and conclusions are different from those of the appealed recommendation." TMC 1.70.030. This can mean either (1) all decisions must be in writing and that findings and conclusions are required if they differ from the appealed recommendation or (2) if the Council's findings and conclusions differ from the appealed recommendation, then they need to be put in writing. Northshore argues that the qualifying phrase in this provision, "whenever such findings and conclusions are different from those of the

16

appealed recommendation," applies only to the requirement that the Council specify findings and conclusions. The two compound phrases in the sentence stand alone, Northshore contends, and "[o]nly the second compound phrase contains a subjective clause limited to itself by specifying 'whenever *such* findings and conclusions are different.'" Response Br. of Appellant (Northshore) at 12 (emphasis in original).

Although Northshore's construction of TMC 1.70.030 is plausible when this code section is read in isolation, the construction cannot be reconciled with other provisions of the TMC.[4] TMC 1.70.030 also states that at a hearing "[t]he City Council shall accept, modify, or reject any findings or conclusions, or remand the recommendation of the Hearing Examiner for further hearing." TMC 1.70.040 provides: "When taking any final action, the City Council shall make and enter findings of fact of the record and conclusions therefrom which support its action. . . . The City Council may adopt all or portions of the Hearing Examiner's findings and conclusions supporting the recommendation." Finally, TMC 1.70.050, which is titled "Review of Council decision," states: "Pursuant to RCW Chapter 36.70C, the final date of the decision of the City Council on the appeal shall be deemed to be the date the motion concerning the appeal is adopted by the City Council and shall be considered to have been entered into the public record on that date." Thus, chapter 1.70 TMC, when read as a whole, contemplates the Council issuing final land use decisions at city council hearings by oral motion. If a written decision were required in all instances, TMC 1.70.050 would be rendered meaningless. When viewed through the lens of chapter 1.70 TMC as a whole, the code language in question here should be read to mean that a

---

[4] *See State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) ("We do not apply [the last antecedent rule of grammar] if other factors, such as context and language in related statutes, indicate contrary legislative intent or if applying the rule would result in an absurd or nonsensical interpretation.").

written decision is not necessary where the Council agrees with the Examiner's findings and conclusions. That was the case here, as the Council voted to concur in the Examiner's findings, conclusions, and recommendation. In this circumstance, the TMC did not require the Council to issue a written decision.[5]

Northshore's final argument is that the structure of RCW 36.70C.040(4) supports the conclusion that the Council issued a written decision. Northshore points out that "LUPA speaks first to 'a written decision' that is 'mailed by the local jurisdiction.'" Response Br. of Appellant (Northshore) at 17 (citing RCW 36.70C.040(4)(a)). Northshore contends that because there was a written decision in the Clerk's notice of appeal results, the court must end its inquiry at subsection (a) of RCW 36.70C.040(4). Northshore argues that "[i]n order to reach subsection (c) . . . there would have to have been no written decision mailed out by the jurisdiction." Response Br. of Appellant (Northshore) at 17. Northshore's argument relies on the premise that the Clerk's notice of appeal results constitutes a written decision, an argument we reject. Northshore's argument fails because it has not established that the Council issued a written decision.

---

[5] The City also persuasively asserts that this reading is consistent with the longstanding interpretation of the Clerk, the individual who signed the notice of appeal results. The Clerk shall

> [p]ublish all legal notices, unless otherwise provided by law or ordinance" and "[p]erform such other duties as may be imposed or prescribed by the laws of the State of Washington, the Charter of the City of Tacoma, the ordinances of the City of Tacoma, or as may be required or requested by the Mayor and members of the Council, the City Manager, or the City Attorney.

TMC 1.06.100(7). The Clerk declared that the TMC does not require the mailing of a notice of appeal results and that the City provides such a document to the parties of record simply as a courtesy. Deference to the City's interpretation of its own code provides further support for the argument that the Council was not required to issue a written decision in this case. *See Mall, Inc. v. City of Seattle*, 108 Wn.2d 369, 377-78, 739 P.2d 668 (1987) ("It is a well established rule of statutory construction that considerable judicial deference should be given to the construction of an ordinance by those officials charged with its enforcement.").

### 3. Northshore Received Notice of the Land Use Decision

Furthermore, Northshore had ample notice that the land use decision was scheduled for and was in fact made at the April 13 hearing. Before the hearing, the City's legal counsel emailed to Northshore's and SNET's legal counsel "a memorandum prepared [by the City's legal counsel] to assist the City Council from a procedural standpoint in its deliberations and decision on the appeal." CP at 540. The memorandum, entitled "Tacoma City Council—Appeal Procedures," set forth the framework for the Council's consideration of the application for rezone modification, including the options for action. *See* CP at 574–76.

Northshore was thus on notice that one of the options for action was to "[a]ffirm or concur in the Hearing Examiner decision (which means deny the rezone request), based on the findings and conclusions prepared by the Hearing Examiner)." CP at 576. In addition, counsel for Northshore[6] attended the hearing, presented oral argument on the appeal on behalf of Northshore and the Owners, and was aware that the Council voted on a motion to affirm the Examiner's recommendation and deny the appeal. Northshore's counsel later declared that he had been "under the impression that the City Council might not act on the appeal during the appeal hearing . . . ." CP at 541. But the Council made a decision at the hearing rendering this preconception irrelevant.

The Clerk's notice of appeal results was a notice and not a final decision; the TMC does not require a written decision; and Northshore was on notice that the Council made an oral decision at the April 13 hearing. Northshore's service was untimely: 21 days after April 13 is

---

[6] While counsel for Northshore was present at the hearing, the owners' legal counsel was not at the hearing. Northshore's counsel declared, "[Before the hearing], I called [the owner's] legal counsel . . . and informed him that I did not see a reason for him to attend the hearing as there would be, at most, 10 minutes for argument and a decision might not be reached that evening." CP at 541.

May 4. Northshore served the City and SNET on May 6, at least one day later than RCW 36.70C.040(4)(c) allows. Accordingly, the superior court erred by denying the City's and SNET's motions to dismiss the amended LUPA petition for Northshore's failure to timely serve them.

II.     THE ORIGINAL LUPA PETITION

The City contends that dismissal of Northshore's amended LUPA petition also requires dismissal of Northshore's original LUPA petition.[7] Because effective relief under the original LUPA petition was contingent on the successful appeal of the amended LUPA petition, we agree.

Northshore seeks preliminary plat and site plan approval that conflicts with the condition of the existing R-2 PRD zone that requires the golf course to remain as open space. The rezone modification application sought to remove the golf course's open space designation. As the Examiner concluded, "The inability to approve the Rezone Modification . . . makes approval of the Site Plan impossible. . . . Similarly the failure to demonstrate sufficient changes in condition removes any basis for modifying or removing the [Concomitant Zoning Agreement] condition requiring adherence to the original Site Plan." CP at 43. Thus, because we direct dismissal of Northshore's appeal of the Council's adoption of the Examiner's recommendation to deny the request for a rezone modification, the golf course's open space designation remains in place. Accordingly, we remand to the trial court to dismiss the original LUPA petition as well as the amended petition.

---

[7] Northshore does not respond to this argument in its brief.

20

III.   ATTORNEY FEES

In its response brief to Northshore's appeal, the City requests attorney fees under RCW 4.84.370. It does not request attorney fees in its opening brief as a cross-appellant. Thus, it is unclear whether the City requests attorney fees in the event it prevails on its cross appeal.

RCW 4.84.370(1) reads:

Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
       (a)  The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and
       (b)  The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

The city "whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal." RCW 4.84.370(2). Here, the superior court upheld the City's decision to deny Northshore's rezone request. But, on appeal, we do not reach the merits of the City's decision. *See Witt v. Port of Olympia*, 126 Wn. App. 752, 759, 109 P.3d 489 (2005) (concluding that the statutory language of RCW 4.84.370 supports the conclusion that the "legislature intended to allow attorney fees only to a party who prevails on the merits"); *Overhulse*, 94 Wn. App. at 601 (concluding that a county was not the prevailing party under RCW 4.84.370 because its decision was not upheld when the superior court dismissed for lack of jurisdiction and did not review the merits of the county's decision). *But see Prekeges v. King County*, 98 Wn. App. 275, 285, 990 P.2d 405 (1999) (concluding that RCW 4.84.370 does not

21

require that the party must have prevailed on the merits). Accordingly, consistent with *Witt* and *Overhulse*—two decisions from this division—we decline to award the City attorney fees.

We reverse the trial court's order denying the City's and SNET's motions to dismiss the amended LUPA petition for lack of jurisdiction and remand for dismissal of the amended and original LUPA petitions.

Penoyar, J.

We concur:

Van Deren, J.

Worswick, C.J.