FILED
COURT OF APPEALS
STATE OF WASHINGTON

2016 JUL -5 AM 8:3



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VERN F. SIMS FAMILY LIMITED PARTNERSHIP I, GILBERT FAMILY PROPERTIES, LLC, and LDV BURLINGTON PROPERTIES, LLC, | No. 73608-6-I |
| | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| CITY OF BURLINGTON, a municipal corporation in Washington, and COSTCO WHOLESALE CORPORATION, a Washington Corporation, | |
| Respondents. | FILED: July 5, 2016 |

APPELWICK, J. — Establishment of an assessment reimbursement area pursuant to chapter 35.72 RCW is a land use decision. Sims's challenge to the assessment reimbursement area provisions was untimely under the Land Use Petition Act's[1] 21 day statute of limitations. Dismissal of those claims with prejudice was proper under LUPA. Sims's remaining claims are not ripe for review. We affirm.

---

[1] Chapter 36.70C RCW

BACKGROUND

This case involves the application of chapter 35.72 RCW, which establishes the authority and procedures for reimbursement contracts. These are contracts entered into between a city and property owners who are developing their property. See RCW 35.72.010. The contracts enable developing property owners to be reimbursed for any excess benefit created by street improvements they make during the course of developing their property. Id. Other property owners who subsequently develop their property and benefit from the improvements pay a reimbursement share. Id. Specifically,

(1) . . . [T]he contract may provide for the partial reimbursement to the owner or the owner's assigns for a period not to exceed fifteen years of a portion of the costs of the project by other property owners who:

(a) Are determined to be within the assessment reimbursement area pursuant to RCW 35.72.040;

(b) Are determined to have a reimbursement share based upon a benefit to the property owner pursuant to RCW 35.72.030;

(c) Did not contribute to the original cost of the street project; and

(d) Subsequently develop their property within the period of time that the contract is effective and at the time of development were not required to install similar street projects because they were already provided for by the contract.

Street projects subject to reimbursement may include design, grading, paving, installation of curbs, gutters, storm drainage, sidewalks, street lighting, traffic controls, and other similar improvements, as required by the street standards of the city, town, or county.

Id. The reimbursement is a pro rata share of construction and reimbursement of contract administration costs of the street project. RCW 35.72.030. A city determines the reimbursement share by using a method of cost apportionment which is based on the benefit to the property owner from such project. RCW 35.72.030. The procedures for reimbursement contracts are governed by RCW 35.72.040:

> The procedures for assessment reimbursement contracts shall be governed by the following:
>
> (1)     An assessment reimbursement area shall be formulated by the city, town, or county based upon a determination by the city, town, or county of which parcels adjacent to the improvements would require similar street improvements upon development.
>
> (2)     The preliminary determination of area boundaries and assessments, along with a description of the property owners' rights and options, shall be forwarded by certified mail to the property owners of record within the proposed assessment area. If any property owner requests a hearing in writing within twenty days of the mailing of the preliminary determination, a hearing shall be held before the legislative body, notice of which shall be given to all affected property owners. The legislative body's ruling is determinative and final.
>
> (3)     The contract must be recorded in the appropriate county auditor's office within thirty days of the final execution of the agreement.
>
> (4)     If the contract is so filed, it shall be binding on owners of record within the assessment area who are not a party to the contract.

This case also requires us to make a determination as to whether certain actions taken by a city constitute land use decisions for the purposes of the Land Use Petition Act (LUPA). LUPA governs the process for judicial review of land use

3

decisions made by local jurisdictions. RCW 36.70C.010. Under LUPA, a "land use decision" is defined as a

> [F]inal determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
>
> . . . .
>
> (b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and
>
> (c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property.

RCW 36.70C.020(2). Under LUPA, a petition challenging a land use decision must be filed within 21 days of the land use decision, or the petition is barred as untimely and the court has no jurisdiction. RCW 36.70C.040(3); Knight v. City of Yelm, 173 Wn.2d 325, 337, 267 P.3d 973 (2011).

## FACTS

This dispute began when Costco Wholesale Corporation proposed to construct a new store in the City of Burlington (City) near Interstate 5 (I-5). The City reviewed Costco's proposal, including a traffic impact study, and found that the proposal did not have a probable significant adverse impact on the environment. Consequently, on November 24, 1999, it issued a Mitigated Determination of Nonsignificance (MDNS), which included conditions to mitigate any adverse impacts of the project. One condition, condition 14, mandated that Costco work with the City to complete certain traffic mitigation measures (mostly

4

improvements to I-5 and George Hopper Road). The MDNS noted, "The applicant may elect to pay for the required mitigation up front and the City may be able to initiate a pay back agreement based on legal requirements, so that as new projects come in, each project will be required to compensate COSTCO directly based on peak hour trip generation for a fifteen year period."

On December 9, 1999 the city council introduced and passed ordinance 1419. The ordinance amended Burlington Municipal Code (BMC) 12.28.010 to establish standards and procedures for reimbursement agreements for street projects. It stated that now the city engineer may require right-of-way improvements as a prerequisite to further property development, and that it may establish a timeline for those improvements. It also added a provision that tracked the language of RCW 35.72.020, stating that the City may enter into reimbursement contracts with property owners. This type of contract is also known as a "latecomer agreement."

On February 28, 2000 the City granted Costco a permit to construct its facility. On August 1, 2000 Costco received a temporary certificate of occupancy. Costco built its store and made the traffic improvements. Costco spent approximately $1.7 million on the project, which created additional traffic capacity at the George Hopper Road/I-5 intersection beyond what was necessary to mitigate the impact of the development.

Then, on July 7, 2006,[2] the city attorney presented a resolution enabling the City to enter into a latecomer agreement with Costco and a final draft of the latecomer agreement to the city council. The city attorney presented the proposed resolution at a city council meeting on July 13, 2006. A motion was made to approve the resolution. All approved the motion. The resolution was formally approved as resolution 13-2006. The resolution established a preliminary assessment reimbursement area pursuant to chapter 35.72 RCW, resolved that a preliminary determination of area boundaries and assessments of the affected property owners' rights and options would be forwarded to the property owners in order to comply with the provisions of RCW 35.72.040(2), and resolved that a hearing would be held if requested by an affect property owner within 20 days of the notice being mailed.

Pursuant to RCW 35.72.040, in March 2007, property owners situated within the preliminary assessment reimbursement area were notified via certified mail. Several property owners requested a hearing. The hearing took place on

---

[2] During these intervening years, Transportation Solutions, Inc. (TSI) performed post-occupancy traffic studies of the relevant intersection, Costco worked to satisfy all of the requirements of the MDNS, and TSI prepared draft latecomer agreements. On May 25, 2004, a new Burlington City Attorney contacted counsel for Costco. He noted that although Costco had been operational for several years and although neighboring developments had since been constructed or were under construction and benefiting from the road improvements, until recently, Costco had failed to actively pursue the latecomer agreement. He stated that he was concerned about Costco's ability to be reimbursed at that point. And, he noted that he was unaware of an agreement between the City and Costco that would require the City to enter into a latecomer agreement with Costco. Communication continued between the City and Costco. On August 6, 2004, the City noted that it had reviewed a proposed latecomer agreement from Costco and made comments.

August 23, 2007. The city attorney spoke and indicated that the city council would make a decision after hearing from property owners and Costco. And, he noted that whatever decision the city council made would be final. Attorney Tom Moser appeared and spoke on behalf of Vern F. Sims Family Limited Partnership and the Gilbert Family Properties LLC (collectively "Sims") which own property in the assessment area. He requested that Sims's zone designation be revised to a lower assessment rate.[3]

After Costco and property owners spoke, the city attorney stated that the city council could accept the property owners' appeals, ask for further studies, or make a decision immediately. City council members asked several questions and suggested that the city attorney respond to their questions at the next city council meeting. City council members agreed to continue to the item to the next city council meeting.

The issue was raised again at the city council meeting on October 8, 2009—over two years later. Moser again spoke on behalf of Sims. He noted that because Costco was constructed in Burlington 10 years earlier, it was too late to ask remaining property owners to pay. The city attorney clarified that the city council was to decide whether to approve the appeal of the specific property owners by removing them from the assessment area—not whether to generally approve the latecomer agreement. The city attorney noted that following a decision by the city council on the assessment area, he would prepare conclusions of law and findings

---

[3] TSI's traffic study used a traffic model, which broke the City into various zones to determine how many vehicle trips from each zone would use the street improvements. The assessment rate is determined accordingly.

of fact and bring them before the council at the next regular meeting. And, following that, the city council would consider the latecomer agreement itself. The city council voted to deny the property owners' appeals.

As of February 10, 2011, findings and conclusions had not yet been entered and were discussed at that city council meeting. The city attorney appeared at the city council meeting and noted that although the public hearing was held on October 8, 2009, two parties requested time to speak to council members about the latecomer agreement issue. Council members elected to hear the two parties speak. The two parties—including Moser who represented Sims—requested that the Council hold a new public hearing, because two members of the current City Council were not in office when the October 2009 hearing was held and that issues of delay and intervening development raised at the hearing were not addressed in the proposed findings and conclusions. At that point, the city council voted to approve the findings of fact and conclusions of law as presented. The findings and conclusions stated that the property owners' appeals were denied.[4]

On April 8, 2011, Sims filed a complaint for declaratory judgment, writ of certiorari, and injunctive relief in Skagit County Superior Court. Costco filed an answer to Sims's complaint on September 22, 2011. It alleged, among other things, that Sims's complaint was untimely. On November 13, 2013, Sims moved

---

[4] But, it also concluded that certain properties—including Sims's—should be assigned to a different transportation analysis zone for assessment purposes, as requested by Moser, because the completion of a road in the area altered the traffic analysis. When the findings and conclusions were signed and attested by Greg Thramer, Finance Director/City Clerk, on June 9, 2011, the only change was to the date. The blank "day of February" became the "9th day of June."

for partial summary judgment, challenging the City's failure to give proper notice to property owners pursuant to RCW 35.72.030 and RCW 35.72.040. On February 21, 2014, Sims moved for summary judgment, arguing that RCW 35.72.020 has a 15 year statute of limitations that precludes Costco from now looking to latecomers for reimbursement. On April 22, 2014, Sims filed its third motion for summary judgment, arguing that Costco's improvements were not required by any ordinance as mandated by RCW 35.72.010. On December 17, 2014, Sims filed its fourth motion for summary judgment, claiming that the City's resolution 13-2006 and proposed latecomer agreement do not provide a benefit to Sims's property as required by RCW 35.72.030. The trial court denied Sims's first four motions.

Then, on February 20, 2015, Costco filed a motion to dismiss, claiming that Sims's claims are subject to and barred by LUPA, because it requires that any petition for review be brought within 21 days of a final land use decision. On June 12, 2015, the trial court dismissed Sims's complaint as time barred. It reasoned that the matter was subject to LUPA, and that the final decision for purposes of calculating when the LUPA statute of limitations began to run was when the city council rendered its oral decision denying Sims's appeal. Sims appeals. As of the date of oral argument in this appeal, the latecomer agreement has not been signed or filed.

## DISCUSSION

This court reviews the trial court's ruling on a motion to dismiss de novo. Becker v. Cmty. Health Sys., Inc., 184 Wn.2d 252, 257, 359 P.3d 746 (2015). Whether the trial court properly granted Costco's motion to dismiss involves

questions of statutory interpretation. This court reviews issues of statutory interpretation de novo. Cerillo v. Esparza, 158 Wn.2d 194, 199, 142 P.3d 155 (2006). Additionally, when a superior court acts in an appellate capacity, as it did in this case by reviewing the city council's decision, the superior court has only jurisdiction that is conferred by law. Conom v. Snohomish County, 155 Wn.2d 154, 157, 118 P.3d 344 (2005). Thus, before a superior court may exercise its appellate jurisdiction, statutory procedural requirements must be satisfied. Id. A court lacking jurisdiction must enter an order of dismissal. Id. A petition under LUPA must be filed within 21 days of the land use decision or the petition is barred and the court has no jurisdiction. RCW 36.70C.040(3); Knight, 173 Wn.2d at 337. Whether a court may exercise jurisdiction is also a question of law subject to de novo review. Id. at 336.

A. Land Use Decision

First, Sims asserts that LUPA does not apply, because RCW 35.72.010 and LUPA conflict. It asserts that because a final decision is rendered under RCW 35.72.040(2) that there can be no appeal leading to a final decision for purposes of LUPA.

The preliminary determination of area boundaries and assessments may be appealed by property owners within the proposed assessment area by requesting a hearing within 20 days of mailing of the notice. RCW 35.72.040(2). If no property owners appeal the preliminary determination of area boundaries and assessments, the preliminary determination becomes final. See RCW 35.72.040(2). If an appeal is filed, the decision on appeal is the final decision. Id.

A land use decision is reviewable under LUPA only if it is a final determination by the local body or officer with the highest level of authority to make the determination.[5] RCW 36.70C.020(2). Therefore, the two statutes can be read in harmony. RCW 35.72.040 advances LUPA's goals by making it clear when a decision is final and ripe for appeal under LUPA. Moreover, Sims provides no authority to support its assertion that the two statutes conflict.

Sims also claims that its action cannot be time barred under LUPA, because the City has not yet made a land use decision that triggers LUPA. Therefore, the next question we must answer is whether the city council made a land use decision that triggered LUPA.

A "land use decision" means a final determination on a declaratory decision regarding the application to a specific property of other ordinances or rules regulating the development of real property. RCW 36.70C.020(2)(b). The nature of the decision made by the city council is made clear by what was set out in the city council's findings of fact and conclusions of law and by what issues and challenges were raised by property owners both in their written comments and orally at the city council hearing. The approval of the assessment area was a final decision under RCW 35.72.040. The city council's determination mandated that should Sims or others decide to develop their property within the assessment area during the period of the latecomer agreement, once executed, they would have to

---

[5] RCW 35.72.040(2) states that the "legislative body's" ruling regarding assessments is determinative and final. Sims does not contend that the city council is not the local body with the highest level of authority to make the determination.

11

pay assessments for benefits received pursuant to the latecomer agreement. Clearly, this was a land use decision.

Sims asserts that the cases Costco relied on below and on appeal show that LUPA applies only when a land use agency has required a property owner to pay a specific fee. Sims argues that, therefore, LUPA will not apply until Sims seeks a permit to develop its property, because that is when the specific latecomer fee will be calculated and imposed.

We agree that a final land use decision for LUPA purposes is made when a property owner applies for a permit, and the City calculates and imposes the property owner's actual assessments. See RCW 36.70C.020(2)(a); see, e.g., James v. County of Kitsap, 154 Wn.2d 574, 586, 115 P.3d 286 (2005) (holding that the imposition of impact fees as a condition on the issuance of a building permits was a land use decision subject to LUPA); City of Federal Way v. Town & Country Real Estate, LLC, 161 Wn. App. 17, 35-36, 252 P.3d 382 (2011) (challenge of a hearing examiner's decision to strike traffic impact mitigation payment properly brought under LUPA); United Dev. Corp. v. City of Mill Creek, 106 Wn. App. 681, 686-87, 26 P.3d 943 (2001) (holding that the imposition of impact fees as a condition of preliminary plat approval is a land use decision triggering LUPA). But, those cases do not support the proposition that the imposition of a fee is the only decision which can trigger a LUPA appeal.

B. The Decision Date

Sims also argues that even if the city council made a land use decision and LUPA applies, the statute of limitations did not begin to run when the city council

12

made its oral decision in 2009. Sims argues that the statute of limitations does not begin to run until there is a written decision. It argues that this did not occur until June 9, 2011 when the city clerk signed the written findings of fact and conclusions of law. Therefore, the next question we must answer is when the land use decision denying Sims's appeal was made for LUPA purposes.

As stated above, a LUPA petition must be filed within 21 days of the issuance of a final determination by the local jurisdiction. RCW 36.70C.040(3). A local jurisdiction has issued a land use decision when one of the following occurs:

> (4) For the purposes of this section, the date on which a land use decision is issued is:
>
> (a) Three days after a written decision is mailed by the local jurisdiction or, if not mailed, the date on which the local jurisdiction provides notice that a written decision is publicly available;
>
> (b) If the land use decision is made by ordinance or resolution by a legislative body sitting in a quasi-judicial capacity, the date the body passes the ordinance or resolution; or
>
> (c) If neither (a) nor (b) of this subsection applies, the date of the decision is entered into the public record.

RCW 36.70C.040(4). In Habitat Watch v. Skagit County, 155 Wn.2d 397, 408 n.5, 120 P.3d 56 (2005), the Washington Supreme Court expressly discussed when a decision is likely to fall into subsection (c). The Habitat court explained that subsection (c) likely applies when a decision is neither written nor made by ordinance or resolution under subsection (a) or (b). 155 Wn.2d at 408 n.5. It noted that this would include a decision "made orally at a city council meeting" which issues "when the minutes from the meeting are made open to the public or the decision is otherwise memorialized such that it is publicly accessible." Id.

13

Then, in <u>Northshore Inv'rs v. City of Tacoma</u>, 174 Wn. App. 678, 691, 301 P.3d 1049 (2013), the court considered facts similar to those contemplated by the <u>Habitat</u> court. The <u>Northshore</u> court considered whether a city council's oral vote to deny Northshore's appeal of a rezone modification was a final land use decision triggering LUPA's statute of limitations. 174 Wn. App. at 681-82. Or, whether the final decision issued after the city clerk later mailed a written notice to interested parties. <u>Id.</u> at 689.

At the city council meeting, counsel for Northshore was present. <u>Id.</u> at 685. The city council orally voted on a motion and ultimately denied the appeal. <u>Id.</u> Directly after the meeting, a video recording of the hearing was posted on the City's website, a DVD (digital video disc) copy of the video was delivered to the public library, and the voting record and a closed-caption transcript of the hearing were made available on the city's website. <u>Id.</u> at 685-86. The clerk mailed a written notice of appeal to the parties two days later. <u>Id.</u> at 686. The <u>Northshore</u> court ultimately held that the land use decision issued prior to the written notice of appeal—when the decision was entered into the public record. <u>Id.</u> at 695. It noted that no further action was required to make the oral vote a final decision. <u>Id.</u>

In so holding, the <u>Northshore</u> court distinguished itself from <u>Hale v. Island County</u>, 88 Wn. App. 764, 946 P.2d 1192 (1997). <u>Id.</u> at 690-91. There, the court held that when a board of county commissioners made an oral decision and then mailed a written decision 15 days later, the written decision triggered RCW 36.70C.040, because the writing itself was the decision. <u>Hale</u>, 88 Wn. App. at 768. The <u>Hale</u> court reasoned that the written decision was the final decision, because

14

it was prepared in advance and presented to the board for approval. Id. at 769. When the board voted to approve, it signed the document. Id. The document was not written after the decision had been made. Id.

The facts here are more similar to those in Northshore than in Hale. Here, the city council was not presented with a written decision prior to its oral ruling during the October 2009 meeting. Sims argues that Northshore is distinguishable, because there, the written notice merely repeated what the city council had already decided. Sims then makes a conclusory argument that the findings of fact here are not a memorialization of an earlier decision, but rather the decision itself. But, the October 2009 meeting minutes indicate that a motion was made to deny the appeals of the property owners regarding the latecomer agreement and that the motion carried. Therefore, the decision was made at the city council meeting, nearly two years earlier than the findings and conclusions were signed by the city clerk. In fact, the city attorney clarified at the October 2009 hearing that he would prepare conclusions of law and findings of fact following a decision by the city council at that meeting. And, like the oral decision in Northshore, the city council's decision here was entered into the public record via the meeting minutes.

We hold that the final decision triggering LUPA's statute of limitations was the oral decision made by the city council at the October 8, 2009 city council meeting.[6] Consequently, dismissal of the action was proper. We need not address

---

[6] But even if Hale controlled, the findings and conclusions presented in writing at the February 10, 2011 city council meeting were approved as submitted at that meeting. Sims cites no authority for the proposition that the findings and conclusions did not become enforceable until attested by the city clerk on June 9, 2011. Except for the date of attestation, the findings and conclusions attested were

15

the denial of Sims's summary judgment motions further, because each could have been denied on the same basis.

## C. Remaining Claims are Not Ripe

Sims argues that no ordinance was in place requiring Costco to make the improvements as required by RCW 35.72.010. Sims argues that due to the 15 year limitation in RCW 35.72.020, too much time has passed to allow a latecomer agreement to be executed. These arguments were untimely under LUPA to challenge the assessment area. To the extent the arguments are addressed to the legality of the latecomer agreement, the issues are not ripe for consideration. No latecomer agreement had been executed at the time of this appeal.

Sims also argues that the delay has prejudiced it because intervening developments could have been assessed for the benefits they received, but were not. It argues that had assessments been imposed on the other developments, Sims may have been relieved from assessment under RCW 35.72.030 and RCW 35.72.040. Sims also argues that all of the excess trip capacity created by Costco has been consumed such that no benefit remains available for which it could be assessed. These arguments address the appropriate amount of an assessment that has not yet been made. They are not ripe for review.

---

identical to those approved February 10. Sims provides no authority for the proposition that no decision occurred until the city clerk attested a written version of the motion that passed. Therefore, whether the final decision was rendered on October 8, 2009 or on February 20, 2011, Sims's lawsuit, filed April 8, 2011, was untimely under LUPA to raise challenges to the findings and conclusions creating the assessment zones.

The record demonstrates that traffic capacity ebbs and flows based on many factors other than traffic generated by property development in the assessment area. The challenge to whether a benefit is conferred can be made at the time of the imposition of assessments during the permit process and is subject to LUPA. This challenge might also be available independent of a permit application if it could be shown that no benefit is possible to anyone in the transportation analysis zone for the duration of the reimbursement assessment contract. Again, because no latecomer agreement has been executed, these issues are not ripe for our consideration.

We affirm.

WE CONCUR:

17