IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ARTHUR GRESH, | ) | No. 31394-8-III |
| Appellant, | ) | |
| v. | ) | |
| OKANOGAN COUNTY AND | ) | UNPUBLISHED OPINION |
| MAZAMA PROPERTIES, LLC, | ) | |
| Respondent. | ) | |

KORSMO, C.J. — Appellant Arthur Gresh brought a LUPA[1] claim challenging an earlier nonappealed final land use decision concerning the same property. Because our Supreme Court has already determined that LUPA does not permit such untimely collateral attacks, we affirm. Respondent's request for attorney fees requires us to weigh in on a split in the divisions of this court regarding the availability of attorney fees under RCW 4.84.370 in this circumstance. We award the requested fees.

FACTS

Mazama Properties LLC (MP) is the developer of the Nordic Village subdivision in Okanogan County's unincorporated Mazama community. In 2007, the county

---

[1] Land Use Petition Act, chapter 36.70C RCW.

approved MP's plan for a four lot Nordic Village short plat. MP then sought permission to further divide lot 1 into a 12 lot long plat.

In July of 2010 the county issued a mitigated determination of nonsignificance (MDNS) for the long plat under the State Environmental Policy Act (SEPA), chapter 43.21C RCW. The MDNS conditioned approval on MP limiting Nordic Village's water use to the permit exemptions specified in RCW 90.44.050.[2] The county gave its final approval to the long plat on March 14, 2011. The final approval of the long plat went unchallenged.

Following approval of the long plat, MP applied to the county to rezone six of the twelve lots in the long plat. Using the MDNS that was developed during the long plat approval process, the county issued a determination of nonsignificance (DNS) for the proposed rezone. On August 23, 2011, the county gave final approval to the rezone.

On September 9, 2011, neighboring property owner Arthur Gresh filed a LUPA petition challenging the rezone. Mr. Gresh argued that the DNS should not have been issued and needed to be withdrawn because Nordic Village did not have an adequate and

---

[2] The adequacy of the Nordic Village's well water supply has been an issue throughout the property's development. Like Mr. Gresh, this court has a hard time understanding how the twelve lots hope to subsist on only 2,880 gallons of water per day combined, especially when the Okanogan County Health District requires each of the six residential lots to be allocated a minimum of 360 gallons per day. However, because the MDNS was not timely challenged the way to ensure proper water use at this stage is through an action to enforce the conditions specified in the MDNS in the event that those conditions are violated.

legal water supply. Because the DNS was premised on the finding of an adequate and legal water supply in the MDNS, Mr. Gresh's petition necessarily challenged the MDNS.

In January of 2012, the superior court dismissed the petition. The court ruled that the MDNS was unreviewable due to LUPA's 21 day statute of limitations. Mr. Gresh thereafter timely appealed to this court.

## ANALYSIS

Mr. Gresh's appeal takes issue with the court's ruling on his challenge to the long plat. MP in turn requests its attorney fees under RCW 4.84.370. We will address each claim in turn.

*LUPA*

"Under SEPA, before a local government processes a permit application for a private land use project, it must make a 'threshold determination' of whether the project is a 'major action significantly affecting the quality of the environment.'" *Anderson v. Pierce County*, 86 Wn. App. 290, 300-01, 936 P.2d 432 (1997) (quoting RCW 43.21C.030(2)(c)). The responsible official will usually issue either a determination of significance (DS) or a DNS. *Id.* "A DS mandates intensified environmental review through preparation of an EIS [Environmental Impact Statement]." *Id.* "Conversely, a DNS means that no EIS will be required." *Id.*

An alternative threshold determination is the MDNS, "which involves changing or conditioning a project to eliminate its significant adverse environmental impacts." *Id.*

3

(citing WAC 197-11-350); RCW 43.21C.060. With an MDNS "the governmental agency may specify mitigation measures and issue a MDNS only if the proposal is changed to incorporate those measures." *Id.* at 301-02 (citing WAC 197-11-350(3)).

In the present case, the county issued an MDNS that applied to the long plat approval. A few months later, the county, relying on the MDNS, issued a DNS with regard to the rezone. An agency's reliance on existing SEPA documents to justify later actions is expressly permitted to prevent needless duplication of efforts. WAC 197-11-600; *Thornton Creek Legal Def. Fund v. City of Seattle*, 113 Wn. App. 34, 50, 52 P.3d 522 (2002). Accordingly, the county did not err by relying on the long plat's MDNS to justify the rezone's DNS.

The question here is whether the timely appeal of the rezoning DNS opened up the non-appealed long plat MDNS for collateral attack. The Washington Supreme Court answered this question negatively in *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 182, 4 P.3d 123 (2000).

There the county had granted an application for a site-specific rezone, which constituted a final land use decision. No appeal was taken from that decision. Later, the county made another final land use decision when it approved a plat application for the same property. The Wenatchee Sportsmen Association timely appealed the plat approval. Through that challenge, the Association attempted to collaterally attack the rezone. *Id.* at 174-75. The Supreme Court held that LUPA plainly and unambiguously

4

requires that any challenge to a final land use decision occur within 21 days of issuance. *Id.* at 181-82.

The court reaffirmed the holding of *Wenatchee Sportsmen* a few years later in *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 410-11, 120 P.3d 56 (2005). There, the court held that a LUPA challenge to a grading permit could not be used to collaterally attack a special use permit that had been issued earlier in the development process. The Supreme Court then went further, stating that "even illegal decisions must be challenged in a timely, appropriate manner." *Id.* at 407.

*Wenatchee Sportsmen* and *Habitat Watch* demonstrate the primacy that the doctrine of finality has over land use decisions. Because these cases hold that a previously unchallenged final land use decision cannot be collaterally attacked we affirm the superior court's dismissal of Mr. Gresh's LUPA petition.[3]

*Attorney Fees*

As the prevailing party throughout this action, MP requests attorney fees under RCW 4.84.370. In essence, that statute provides that "parties are entitled to attorney fees

---

[3] Recognizing the controlling effect of these cases, Mr. Gresh also appears to argue that his request for the county to withdraw the MDNS actually operates outside of LUPA because his request was brought under WAC 197-11-340. This argument fails because Mr. Gresh brought his cause of action under LUPA, meaning that he had to comply with LUPA's statute of limitations. If Mr. Gresh wanted to avoid LUPA he needed to have brought his challenge under a different statute, assuming such an alternative route even exists.

only if a county, city, or town's decision is rendered in their favor and at least two courts affirm that decision." *Habitat Watch*, 155 Wn.2d at 413. "The possibility of attorney fees does not arise until a land use decision has been appealed at least twice: before the superior court and before the Court of Appeals and/or the Supreme Court." *Id.* "Thus, parties challenging a land use decision get one opportunity to do so free of the risk of having to pay other parties' attorney fees and costs if they are unsuccessful before the superior court." *Id.* Although this standard seems straight forward in application, we note that the other two divisions of this court are split on whether to award attorney fees when the appellate court affirms a trial court's determination that the LUPA action was untimely.

Division Two was the first to address this issue. It held that a decision based solely on jurisdictional grounds such as the timeliness of a LUPA petition does not fall within the scope of RCW 4.84.370. *Overhulse Neighborhood Ass'n v. Thurston County*, 94 Wn. App. 593, 601, 972 P.2d 470 (1999). *Overhulse* concluded that the statute only applied to final decisions on the *merits*. *Id.* It reached this result by noting that a dismissal for want of jurisdiction does not have res judicata effect. *Id.* (citing *Peacock v. Piper*, 81 Wn.2d 731, 734, 504 P.2d 1124 (1973)).

Six months later, Division One disagreed with this limited reading of RCW 4.84.370. Division One noted that the statute says nothing about prevailing on the merits. *Prekeges v. King County*, 98 Wn. App. 275, 285-86, 990 P.2d 405 (1999).

6

Since then, Division Two has held that the "legislature intended to allow attorney fees only to a party who prevails on the merits" and that a party does not "substantially prevail" under the statute when the appeal is decided on procedural grounds. *Witt v. Port of Olympia*, 126 Wn. App. 752, 759, 109 P.3d 489 (2005); *Quality Rock Prods., Inc. v. Thurston County*, 126 Wn. App. 250, 275, 108 P.3d 805 (2005); *Northshore Investors, LLC v. City of Tacoma*, 174 Wn. App. 678, 701, 301 P.3d 1049 , *review denied*, 178 Wn.2d 1015 (2013). Earlier this year, Division One noted the ongoing disagreement between the two divisions when it refused to back down from *Prekeges* in *Durland v. San Juan County*, 175 Wn. App. 316, 326, 305 P.3d 246 (2013).[4]

Division Three has not yet weighed in on this debate, but must do so now. We believe that attorney fees are available in this circumstance.

Our task is to construe a statute. RCW 4.84.370(1)[5] awards fees to the "prevailing" or "substantially prevailing" party in land use litigation. The term "prevail" does not connote either a merits decision or a procedural one, but suggests only that a party succeeded in the litigation. "Prevail" does not connote a particular type of success.

___

[4] A petition for review is pending under cause no. 89293-8.

[5] In relevant part, RCW 4.84.370(1) states: "Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision."

In the context of attorney fees, the Supreme Court has held that "a party prevails when it succeeds on any significant issue which achieves some benefit the party sought in bringing suit." *Blair v. Wash. State Univ.*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987) (addressing RCW 4.84.010). Under this definition, a party need only succeed in some manner to "prevail." The party need not succeed on the merits, although success on the merits is one way to obtain some benefit.

We believe the *Blair* approach is more useful here than the res judicata approach favored by Division Two. *Peacock* is inapposite because RCW 4.84.370 is not concerned with any benefits from res judicata that may accrue to a party. Instead, prevailing in a land use case is the only criterion for an award of attorney fees. The long-term or collateral benefits of success are not a consideration.

If, as *Habitat Watch* contends, the purpose of the fee award is to give a party one "free" appeal without risk of bearing the other party's costs, then the reason why a party wins or loses is simply not relevant.[6] Indeed, an argument can be made that pursuing a procedurally defective appeal through multiple layers of court is more like a frivolous case than is an appeal addressed to the merits of an argument. The public policy of RCW 4.84.370 is furthered by applying the statute to these facts, while that policy would be defeated by denying application of the statute to some subclass of LUPA appeals.

---

[6] *Habitat Watch*, 155 Wn.2d at 413.

8

No. 31394-8-III
*Gresh v. Okanogan County, et al.*

MP has fended off a LUPA challenge to its development plans. It has substantially prevailed. Accordingly, we grant MP its reasonable attorney fees for this appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, C.J.

WE CONCUR:

Kulik, J.

Fearing, J.

9