[No. 39223-9-I. Division One. November 17, 1997.]

JAY HALE, ET AL., *Respondents*, v. ISLAND COUNTY, ET AL., *Appellants*.

*Richard J. Langabeer* of *Langabeer, Tull & Cuillier, P.S.*, for appellant Island County.

*Carolyn Cliff*, for appellants Nichols Brothers Boatbuilders, Inc. and Matthew J. and Archie Nichols.

*J. Richard Aramburu* of *Law Offices of J. Richard Aramburu*, for respondents.

COLEMAN, J. — After an administrative agency invalidated Island County Code (ICC) provisions for rezoning land, the lower court ordered the County to terminate a pending rezone application of Nichols Brothers Boatbuilders, Inc. (NBBB). Before the administrative determination of invalidity, NBBB had obtained preliminary use approval and filed its application for final approval under the ICC's two-step rezone process. Upon review of Island County's specific code provisions, we hold that preliminary use approval constituted a final and binding rezone decision. Because NBBB thus acquired a vested right to have its final site plan review application processed under the code provisions then in effect, we reverse.

In 1994, NBBB filed an application to rezone property adjacent to its boat building business on Whidbey Island. NBBB wanted to rezone the rural residential parcel to allow for a parking lot and additional storage facilities. The Hales, who own property near NBBB's boatyard, opposed the rezone.

Under the ICC, rural residential land could be put to commercial and industrial uses if the specific site was reclassified as a "Non-Residential Floating Zone." ICC 17.02.100. This involved a two-step application process: the landowner had to obtain "preliminary use approval" before filing an application for "final approval." ICC 17.02.180.d. Preliminary approval was authorized when:

(a) The proposed use is consistent with the Comprehensive Plan;

(b) The benefits of the proposed use(s) to the public outweigh the impacts associated with the proposed use;

(c) The requirements of this Chapter have been met; and

(d) Reasonable conditions can be imposed to ensure that the proposed use is compatible with surrounding permitted uses.

ICC 17.02.180.d.1. According to Island County's formal explanation of intent, preliminary use approval was "binding on the county regarding land use policy." The second step in the rezone process required approval of a specific site plan, unless the Board of Island County Commissioners (BICC) waived site plan review in its preliminary approval. ICC 17.02.180.d.2. Island County's zoning maps would not be changed until after final approval.

Despite the Hales' oral and written opposition at a public hearing on February 5, 1996, the BICC voted to adopt the Planning Commission's recommendation and granted NBBB's preliminary use approval subject to conditions. It did not waive site plan review. On February 20, 1996, the County mailed a copy of the BICC's written decision to the Hales and all other parties of record. The accompanying letter warned NBBB that a complete site plan application was required "or the rezoning to Non-Residential will not be finalized." The Hales filed a land use petition in superior court on March 13, 1996, challenging the BICC's decision.

NBBB submitted its application for final approval in March 1996. Island County later confirmed that it had received NBBB's completed application as of April 9, 1996. But on April 10, 1996, the Western Washington Growth Management Hearings Board entered an order invalidating ICC 17.02's nonresidential floating zone provisions, finding that their allowance for urban development outside designated urban growth areas violated the Growth Management Act (GMA). *Whidbey Environmental Action Network (WEAN) v. Island County*, WWGMHB No. 95-2-0063, 1996 WL 650319 (1995).

Soon after the *WEAN* decision, Island County enacted an ordinance to clarify the status of land use applications that had been pending under the invalidated regulations. The vesting ordinance provided that development project rights on specific site rezones vested upon preliminary use approval. It also stated that its clarification of intent operated retroactively.

In their land use petition to the court below, the Hales sought to reverse NBBB's preliminary use approval and to prevent Island County from granting final site plan approval. The lower court granted the Hales' motion for partial summary judgment, ruling that NBBB's rights had not vested before the *WEAN* determination of invalidity. The court found that the retroactive vesting ordinance was invalid as being inconsistent with the GMA's goals. It thus ruled that Island County could not continue to process NBBB's final site plan review application under the invalidated rezone provisions.

█ We first address NBBB's argument that the Hales did not timely file their petition for judicial review in the court below. A land use petition must be filed in the superior court "within twenty-one days of the *issuance* of the land use decision." RCW 36.70C.040(3) (emphasis added). The Land Use Petition Act provides that the date on which a land use decision issues is either:

(a) Three days after a written decision is mailed by the local jurisdiction or, if not mailed, the date on which the local jurisdiction provides notice that a written decision is publicly available; [or]

(b) If the land use decision is made by ordinance or resolution by a legislative body sitting in a quasi-judicial capacity, the date the body passes the ordinance or resolution; [or]

(c) If neither (a) nor (b) of this subsection applies, the date the decision is entered into the public record.

RCW 36.70C.040(4). We hold that NBBB's preliminary use approval was a written decision, but not an ordinance or a resolution. Because the decision was made in writing and mailed to the interested parties, it was not issued until three days after mailing. While the Hales filed their petition more than 21 days after the hearing, we affirm the lower court's ruling that their petition was timely filed after the written decision's issuance under RCW 36.70C-.040(4)(a).

NBBB claims that its written preliminary use approval

is merely a document memorializing the BICC's earlier action in voting at the public hearing. We disagree and hold that the writing is the decision itself. Nothing in the ICC mandates that the decision be made in writing. But here a proposed written decision was prepared in advance and presented to the BICC for approval. When the BICC voted to approve, it signed the document and had it attested. It states in the present tense that the "use described in this permit shall be undertaken[.]" The document was not written after the decision had been made. When Island County mailed a copy, its cover letter referred to it as a "decision document" and we agree with that characterization.

We also reject NBBB's argument that the decision was made by ordinance or resolution. "Not all council actions take the form of an ordinance, particularly in zoning matters." *DiGiovanni v. City of Tukwila*, 54 Wn. App. 627, 630, 774 P.2d 1244 (1989). The record contains a number of official BICC documents that are expressly titled ordinances or resolutions in their captions. These do not resemble NBBB's informally written preliminary use approval.

In short, the preliminary use approval was a written decision under the Land Use Petition Act. Because it was mailed on February 20, 1996, RCW 36.70C.040(4)(a) expressly applies and sets its issuance date at February 23, 1996. We note that without a local or statutory requirement that a written decision be mailed within a specific time, the Land Use Petition Act lends itself to some uncertainty. But any change to the statute's plain language must come from the Legislature. We hold that the Hales timely filed their land use petition on March 13, 1996, and affirm the lower court's refusal to dismiss the action.

NBBB also argues that the lower court erred by failing to dismiss the land use petition because the Hales failed to join the Puget Sound Metal Trades Council/AFL-CIO (Union) as a copetitioner. The Union had originally joined the Hales in opposing NBBB's use application and in ap-

pealing a threshold determination of nonsignificance under the State Environmental Policy Act (SEPA). But after a hearing examiner denied the SEPA appeal, the Union was not involved in NBBB's use approval process at any time.

 Because the Hales challenged the hearing examiner's decision in their land use petition, the Union was a requisite party below unless it had abandoned its appeal. *See* RCW 36.70C.040(2)(d). When NBBB raised this issue to the lower court, however, the attorney who represented both the Hales and the Union submitted a sworn declaration that the Union had abandoned its appeal:

> I have previously spoken to a representative of the [Union] who advised that it does not wish to pursue and has abandoned its appeal in Island County Hearing Examiner File No. APP 24195 and has authorized me as its counsel to so inform the court.

NBBB moved to strike this evidence as hearsay, but the lower court made no ruling in its order denying NBBB's motion to dismiss.

We affirm the lower court's order because the attorney's declaration stating his client's intent to abandon the appeal should not have been excluded as hearsay. Hearsay is admissible as provided by statute. ER 802. Under RCW 2.44.010(1), an attorney has the authority to bind his or her client in legal proceedings. We see no reason why the lower court was not entitled to rely on the attorney's declaration that his client had abandoned its appeal. We thus proceed to the merits of the case.

We must decide whether NBBB acquired a vested right to have its rezone application processed under the ICC before the Growth Management Hearings Board declared the applicable provisions invalid. We hold that under the ICC's two-step rezoning approval process, NBBB's rights vested when the BICC approved its preliminary use application. We therefore reverse the lower court's ruling that NBBB's final application could not be processed under

the subsequently invalidated ICC provisions for site plan review.

In Washington, a landowner obtains a vested right to develop land under the zoning ordinances in effect when he or she submits a complete building permit application. *E.g., Norco Constr., Inc. v. King County*, 97 Wn.2d 680, 684, 649 P.2d 103 (1982). Courts have applied the vested rights doctrine beyond the realm of building permits to other development permitting schemes. *See Norco*, 97 Wn.2d at 684 (citing cases). But vested rights generally do not apply to rezoning applications because at that point no decision has been rendered. *Teed v. King County*, 36 Wn. App. 635, 644, 677 P.2d 179 (1984); 6 WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 97.8(2)(g), at 97-46 (3d ed. 1996).

We agree with NBBB and Island County, however, that a binding decision to rezone NBBB's land was made upon preliminary use approval. After preliminary use approval, the Planning Director retained the authority to deny an application for site plan review. ICC 16.19.080.b.2. But that final review was limited to site specific requirements. The major policy decision that the proposal was permitted under the then existing ICC provisions had been made. The ICC's two-step scheme was intended to provide landowners with a quick, initial decision whether their proposed use was allowed so that they did not unnecessarily expend funds developing their plans. Nothing in the ICC indicates that the planning director could reconsider the BICC's decision to allow the use approved at preliminary approval. The BICC's action in adopting the Planning Commission's recommendations is expressly defined as "final and conclusive[.]" ICC 16.19.170. We hold that the ICC delegates the critical decision to allow the rezone to the preliminary use approval stage.

"Preliminary" refers only to the initial decision in the two-step process and should not be interpreted as meaning tentative. Our conclusion is supported by the ordinance which clarifies the County's intent that a rezone

applicant's development rights on specific rezones vested upon preliminary use approval. While it was enacted after the *WEAN* declaration of invalidity, the ordinance provides further evidence of the County's original intent and does not plainly contradict the ICC's scheme. We disagree with the lower court that the ordinance was a retroactive attempt to change the law.

■ Because NBBB's rights vested upon preliminary use approval, the Western Washington Growth Management Hearings Board's subsequent determination that Island County's nonresidential floating zone provisions violated the GMA did not affect NBBB's pending application. Since the Board has authority to make only prospective determinations of invalidity, the *WEAN* decision could not extinguish rights that had vested under the invalidated ICC provisions. RCW 36.70A.300(3)(a).

In sum, NBBB's preliminary use approval was binding as a matter of policy. Although final approval was needed to work out site specific details, the County had made the critical decision that the proposed use complied with the ICC. NBBB thus obtained a vested right to have its application processed under the laws in effect at that time. Because NBBB's rights vested before the *WEAN* decision, we reverse the lower court's order to terminate the continued processing of its rezone application.

We reverse.

AGID and BECKER, JJ., concur.