[No. 17795-5-III. Division Three. April 10, 2001.]

CITIZENS FOR RESPONSIBLE AND ORGANIZED PLANNING, ET AL., *Appellants*, v. CHELAN COUNTY, ET AL., *Respondents*.

---

[43] *See* Appellant's Reply Br. at 22.

*Allan Galbraith* and *Robert L. Parlette* (of *Davis, Arneil, Dorsey, Kight & Parlette*), for appellants.

*Gary A. Riesen, Prosecuting Attorney*, and *Susan E. Hinkle, Deputy*; and *Donald L. Dimmitt* and *J. Patrick Aylward* (of *Jeffers, Danielson, Sonn & Aylward, P.S.*), for respondents.

SWEENEY, J. — Meaningful appellate review requires entry of adequate and detailed findings of fact and conclusions of law. *See Org. to Pres. Agric. Lands v. Adams County*, 128 Wn.2d 869, 882, 913 P.2d 793 (1996) ("review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law"). Here, the Chelan County Board of Commissioners (Board) adopted findings and conclusions prepared by the planning staff which do not address the central question presented by the parties—whether the proposed residential subdivision here is urban in character and, therefore, prohibited outside the Interim Urban Growth Area. In fact, there is no conclusion whatsoever on this crucial point. Nor do the findings specify any reasons which would support such a conclusion. We accordingly reverse the decision of the superior court, which affirmed the decision of the Board granting the permit, and remand back to the Board.

## FACTS

B.J. and Geneva Matthews own land in Chelan County in what is known as the Wenatchee Heights area. They applied to the Chelan County Planning Commission to plat about 18 acres for a residential subdivision. The 18 acres are outside Chelan County's Interim Urban Growth Area boundary. Their original plan called for 24 lots with an

average lot size of .66 acres. The Planning Commission recommended denial of the plat. The Matthewses' plan was reviewed by the Board several times in 1995. So they revised their application before the Board voted.

The Matthewses' revised application was called the "Revised Wheeler Hill Rancho II." The revised plan included 15 lots averaging 1.08 acres. The Planning Commission held a public hearing on the Matthewses' plan on August 26, 1996. The Planning Commission recommended denial of the revised plan after extensive public input.

The Board then held a public hearing on the revised plan. It approved the Matthewses' revised plan because the Board concluded it was bound by the decisions of predecessors who approved similar subdivisions.

The Citizens for Responsible and Organized Planning (CROP) appealed the Board's decision to superior court. The superior court concluded that ex parte contact between one of the county commissioners and the Matthewses violated the appearance of fairness doctrine. The court invalidated the Board's approval of the revised plan and remanded back to the Board.

The Board again held a public hearing. And it again voted to approve the Matthewses' revised plan. The Board adopted the findings of fact and conclusions of law prepared by the Planning Commission:

Findings of Fact:

1. The proposed project is preliminary plat approval for a 15 lot residential subdivision on 18.02 acres utilizing a proposed County road and the fee owner of record is Billy J. Matthews.

2. Domestic water and power will be provided by Chelan County Public Utility District and sewage disposal will be provided by on-site septic tanks and drainfields.

3. The proposal is located in a General Use (GU) zoning district and within the 1958 Chelan County Planning Comprehensive Planning Outline.

4. The proposal is located outside of an Interim Urban Growth Boundary.

5. Reviewing agencies were asked to comment on the proposal.

6. Article V of the Chelan County Subdivision Resolution provides for development and subdivision design standards to be applied in the review and approval of major subdivisions.

Conclusions:

1. The proposal is consistent with the intent and requirements of the General Use (GU) zoning district.

2. The proposed lot sizes are consistent with the lot sizes that have been previously approved outside of the Interim Urban Growth Boundaries.

3. As conditioned, adequate provisions have been made for the required elements of RCW 58.17.110, specifically the public health, safety and general welfare and for the following:

a. open space

b. drainage way facilities

c. public and/or private right-of-ways

d. transit

e. potable water

f. sanitary waste disposal

g. parks and recreation

h. playgrounds

i. schools and playgrounds

j. sidewalks

4. Reviewing agency comments have been incorporated into the conditions of approval.

5. The proposal is consistent with the design criteria as outlined in the Subdivision Resolution.

Index of Record, Doc. 234, at 6.

CROP again appealed the Board's decision to superior court. The court affirmed the Board's decision approving the Matthewses' revised plan.

## DISCUSSION

Contentions. CROP contends that the Matthewses' proposed subdivision is "urban growth" and is therefore prohibited under both the Growth Management Act (GMA),

chapter 36.70A RCW, and Chelan County Resolution 93-122[1] adopted pursuant to the GMA. The GMA uses the phrase "urban in nature." RCW 36.70A.110(1). Chelan County Resolution 93-122 uses the phrase "urban in character." As applied here, there is no practical difference between the two phrases. Both distinguish between urban and rural.

The Matthewses respond that the proposed subdivision is consistent with other subdivisions the Board approved under 93-122, and is therefore not urban growth. They also maintain that even if the Board's interpretation of 93-122 is inconsistent with the GMA, their application is vested. And the Board is therefore bound by its earlier view that lot sizes of one acre are rural in character.

Issue. The parties fundamentally misapprehend the question before the court. The question before us is not whether the Matthewses' development is urban in character. That is a determination for the legislative body (here the Board) charged with making the factual findings. Rather, the question for us is whether the Board's decision is supported. That is, whether the findings of fact are supported by substantial evidence and, if they are, whether the factual findings, in turn, support the legal conclusions. *Willener v. Sweeting*, 107 Wn.2d 388, 393, 730 P.2d 45 (1986).

■ Standard of Review. We sit in the same position as the trial court. *Faben Point Neighbors v. City of Mercer Island*, 102 Wn. App. 775, 778, 11 P.3d 322 (2000). Our review is therefore based on the administrative record. *Girton v. City of Seattle*, 97 Wn. App. 360, 363, 983 P.2d 1135 (1999), *review denied*, 140 Wn.2d 1007 (2000). As such, we review the record before the Board. RCW 36.70C.120; *Kahuna Land Co. v. Spokane County*, 94 Wn. App. 836, 841, 974 P.2d 1249 (1999). Relief from a land use decision may be

---

[1] Chelan County Resolution 93-122 provides in relevant part: "BE IT FURTHER RESOLVED that Chelan County shall not approve development proposals beyond interim urban growth area boundaries which are urban in character and require urban governmental services."

granted if the decision is an erroneous interpretation of the law. RCW 36.70C.130(1)(b).

■ Vesting. The Matthewses' application vested in 1994. The applicable rules are, therefore, the GMA as codified in the 1994 Revised Code of Washington and Chelan County Resolution 93-122. CROP does not appeal this issue. The Matthewses argue that vesting means the Board is bound by its decisions on the earlier applications. They are mistaken. Vesting means the right to have the legislative decision made under the law existing at the time of the original application. *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 275, 943 P.2d 1378 (1997). The doctrine vests no right in previous favorable decisions on other applications.

■ GMA. The GMA is a comprehensive framework which requires local governments to plan according to general mandates. *Ass'n of Rural Residents v. Kitsap County*, 141 Wn.2d 185, 188, 4 P.3d 115 (2000). The local government designates an urban growth area (initially an Interim Urban Growth Area)—areas within which urban growth is encouraged and outside of which no urban growth can occur. RCW 36.70A.110(1).

Chelan County adopted its Interim Urban Growth Area (IUGA) by Resolution 93-122: "BE IT FURTHER RE-SOLVED that Chelan County shall not approve development proposals beyond interim urban growth area boundaries which are urban in character and require urban governmental services." Resolution 93-122 neither defines "urban in character," nor does it reference the GMA's definition of "urban growth."

The Matthewses' subdivision is located outside of Chelan County's IUGA. Both the GMA and 93-122 require then that the subdivision *not* be "urban." RCW 36.70A.110(1); Chelan County Resolution 93-122.

Absent from the Board's decision is any conclusion that the Matthewses' subdivision is, or is not, urban—a determination that is required for compliance with the GMA and 93-122. RCW 36.70A.110(1); Chelan County Resolution

93-122. The Board concluded that the Matthewses' proposed lot sizes were consistent with other subdivisions previously approved outside the IUGA. But legally the response is—so what? The question is whether the Matthewses' subdivision is urban. Not, have we done this before?

The Board approved seven subdivisions located outside the IUGA during 1995 and 1996. These subdivisions had average lot sizes ranging between .69 and 4.44 acres. The Matthewses argue, and the Board apparently agreed,[2] that these prior approvals require approval of their subdivision. Again, they do not.

The Board's interpretation misapplies what is meant, legally, by "vesting." A person who has vested is entitled to application of the laws at the time of his or her application. *Noble Manor*, 133 Wn.2d at 275. Here, the Matthewses are entitled to application of the GMA codified in the 1994 Revised Code of Washington and Chelan County Resolution 93-122.

The Matthewses' subdivision is not entitled to automatic approval simply because other subdivisions with similar average lot sizes were approved using the laws they vested under. *See Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 210-11, 884 P.2d 910 (1994) (the enforcement of land use

---

[2] Commissioner Lynch stated:

[T]he Judge in deciding this case made a specific finding, not as to what is rural, or what isn't rural, but the fact is that it vested. In other words, we're playing with the rules of the previous Commission. And we have to do that by law, otherwise we're making a decision that is going to make us look very good in front of all the neighbors and garner some nice feelings, and it's going to go right up that courtroom and get reversed around, and I don't, I just don't believe in this at all. But before I make the motion, I want to make very clear that this Commission is laying down the rules. We aren't going to play by the rules of the former Commissioner. We're going to lay down the rules so everyone knows where they stand. We won't be arguing what is rural and what is urban because the rules will be there. *But in this case, we can't do it, because we have to play by the rules beforehand.*

Clerk's Papers at 52 (emphasis added).

This view also explains why the Board's conclusions focus on the prior approval of other subdivisions rather than whether the Matthewses' subdivision was itself urban.

regulations is not estopped based on prior decisions concerning other property). Said another way, the Board must independently evaluate the Matthewses' subdivision and determine whether it is urban according to the laws in force when the Matthewses filed their application.

The Matthewses argue they are entitled to approval of their subdivision because the approval of the other subdivisions demonstrates the Board's interpretation of 93-122. They base this argument on *Hale v. Island County*, 88 Wn. App. 764, 946 P.2d 1192 (1997). They misread *Hale*.

There, the court held a landowner was vested under a particular zoning regulation even though the zoning regulation was later found to have violated the GMA. *Hale*, 88 Wn. App. at 772. The issue in *Hale* was whether the application could vest under an invalid regulation, not whether the landowner's particular application complied with the underlying regulation. *Id.* at 770. Here, no party is disputing that 93-122 is the applicable county regulation. Nor does anyone argue that 93-122 violates the GMA. The issue here is whether the Matthewses' subdivision is urban based on the laws they vested under—the GMA codified in the 1994 Revised Code of Washington and Chelan County Resolution 93-122. The Board failed to make this determination.

■ CROP argues this court can determine whether the Matthewses' subdivision is urban as a matter of law. It relies on *City of Redmond v. Central Puget Sound Growth Management Hearings Board*, 136 Wn.2d 38, 959 P.2d 1091 (1998). CROP misreads *Redmond*. There, the issue was whether the current use of the land or the owner's intent controlled the definition of "agricultural land." *Id.* at 49. The Supreme Court reviewed de novo. *Id.* It held that neither the current use of land nor the owner's intent controls the definition of "agricultural land." *Id.* at 58. The court then remanded the case to the hearings board (a fact-finding body) for a determination consistent with the definition. *Id.*

*Redmond* did not decide whether a particular piece of land fell within the definition of "agricultural land." It

defined only what the term "agricultural land" means. Similarly, we will not decide whether the Matthewses' subdivision is urban as a matter of law. That determination must come from legislative fact finding. *See* RCW 36.70A.040(3)(c) ("county shall designate and take other actions related to urban growth areas . . . .").

■ Constitutionality. The Matthewses argue that 93-122 is unconstitutionally vague under *Anderson v. City of Issaquah*, 70 Wn. App. 64, 851 P.2d 744 (1993). *Anderson* held a building design code that leaves decisions only to subjective feelings with no objective standards is unconstitutional. *Id.* at 77-78.

Resolution 93-122 was enacted in response to the GMA. It must, therefore, be read in conjunction with the GMA and its policies and definitions. *See S. Martinelli & Co. v. Dep't of Revenue*, 80 Wn. App. 930, 939, 912 P.2d 521 (1996) (related legislation may be construed together to determine the legislative understanding of terms). The GMA sets forth objective policies and definitions. RCW 36.70A.020, .030, .110. When so read, it is not unconstitutionally vague.

We reverse the superior court and remand to the Board for entry of findings of fact and conclusions of law on whether the Matthewses' subdivision is urban under the GMA codified in the 1994 Revised Code of Washington and Chelan County Resolution 93-122.

KURTZ, C.J., and SCHULTHEIS, J., concur.